IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ANDROGEL ANTITRUST LITIGATION (NO. II) | MDL DOCKET NO. 2084 ALL CASES 1:09-MD-2084-TWT |

ORDER

This is a Multidistrict Litigation proceeding involving antitrust actions that are consolidated for pretrial proceedings. It is before the Court on Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc.'s Motion to Disqualify Plaintiffs' Proposed Expert [Doc. 216] and Solvay Pharmaceuticals, Inc.'s Motion to Disqualify Plaintiffs' Proposed Expert and Disqualify Plaintiffs' Counsel [Doc. 217]. For the reasons set forth below, the Court DENIES the Defendants' Motions.

I. Background

A. Underlying Patent Litigation

These cases arise from a lawsuit (the "Patent Litigation") contesting the enforceability and infringement of U.S. Patent No. 6,503,894 (the "'894 Patent"). In this action, the Direct Purchaser Plaintiffs ("Plaintiffs") allege that the Patent Litigation was a sham. Specifically, the Plaintiffs contend that Par Pharmaceutical Companies, Inc., Paddock Laboratories, Inc. (collectively "Par/Paddock"), and other

Defendants "unlawfully delayed competition by settling Solvay's baseless lawsuits and agreeing to stay off the market with their generic versions of AndroGel until 2015." (Pls.' Resp. in Opp'n to Par/Paddock's Mot. to Disqualify Pls.' Expert Witness, at 4.) In the Patent Litigation, Par/Paddock's counsel, Greenberg Traurig, LLP, retained Dr. Bozena Michniak-Kohn as an expert consultant. Dr. Michniak-Kohn entered into a retention agreement with Greenberg Traurig providing that "you will not disclose to anyone (i) information learned by you in the course of assisting us (or any other experts retained by us), (ii) any confidential communications with us, Paddock or Par, their partners, officers, agents or employees, or any other experts retained by us, or (iii) any documents containing or reflecting such information or communications." (Grannon Decl., Ex. A.) Pursuant to this agreement, Dr. Michniak-Kohn advised Greenberg Traurig over the course of six months from 2004-2005. (Ladow Decl. ¶ 28.) During the engagement, Dr. Michniak-Kohn billed 24 hours at $325 per hour. (Id.) Par/Paddock contends that it discussed issues relevant to the Patent Litigation and "shared our own developing mental impressions, legal analysis, and case strategy with her." (Id. ¶ 24.) Ultimately, however, Dr. Michniak-Kohn remained a non-testifying consultant and did not offer a formal report.

Similarly, Solvay sought an expert consultant in the Patent Litigation. In October 2003, James Ferguson, lead counsel for Solvay in the Patent Litigation,

retained Dr. Howard Maibach as a non-testifying expert consultant. (Ferguson Decl. ¶ 5.) Solvay's counsel entered into a written retention agreement with Dr. Maibach providing that "work, opinions, conclusions, and communications will reflect the Unimed and Solvay attorneys' litigation strategies, thought processes and client communications" and thus "will be governed by the attorney-client privilege and attorney work product rule." (Id., Ex. A.) Further, Dr. Maibach agreed that "any non-public documents and information of any kind that [he] . . . acquire[d] from . . . Solvay in connection with this litigation [would] be maintained in strict confidence and [would] not be disclosed to any other person or party." (Id.) Dr. Maibach worked with Solvay for four months, billing approximately ten hours and charging $4000. (Id. ¶¶ 9-10.) Solvay asserts that it shared mental impressions, legal analysis, and litigation strategy with Dr. Maibach. (See Ferguson Decl. ¶¶ 7, 9.)

  B. Plaintiffs' Experts

After filing this suit, the Plaintiffs sought experts in topical drug delivery. The Plaintiffs' initial attempts to retain an expert, however, were unsuccessful. (Chorush Decl. ¶¶ 3-5.) Several potential experts had conflicts or were otherwise unavailable to participate in the litigation. (See id.) On January 10, 2011, Russell Chorush, an attorney representing the Plaintiffs, contacted Dr. Michniak-Kohn about serving as an expert witness in this case. (Id. ¶ 7.) Dr. Michniak-Kohn indicated that she had been

retained by Paddock in the Patent Litigation, but "only worked a very short time for Paddock . . . and was not aware of having received any non-public or confidential information from Paddock." (Id.)  On February 25, 2011, Mr. Chorush sent a letter to the Defendants notifying them of his intention to retain Dr. Michniak-Kohn as an expert witness. (See id., Ex. 2.)  Par/Paddock objected on March 3, 2011. (Id., Ex. 3.)  After March 3, Mr. Chorush had no future contact with Dr. Michniak-Kohn, except to notify her of Par/Paddock's objection. Dr. Michniak-Kohn has not provided the Plaintiffs with an opinion regarding this lawsuit. (Id. ¶ 8.)

Similarly, on September 27, 2010, Mr. Chorush contacted Dr. Maibach to discuss his availability to serve as an expert witness. Mr. Chorush advised Dr. Maibach of the parties to the case and asked whether he could act as an expert. Dr. Maibach had no memory of any prior relationship with any of the Defendants and indicated that he could participate. (Chorush Decl. at ¶ 8; Doc. 238.)  Mr. Chorush then sent Dr. Maibach a copy of a standard retention agreement, which Dr. Maibach has yet to return.

On October 18, 2010, Joseph Opper and Elena Chan, two attorneys from Garwin Gerstein & Fisher LLP, a law firm representing the Plaintiffs, met with Dr. Maibach. (Opper Decl. ¶ 4.)  During the meeting, Opper, Chan, and Dr. Maibach discussed the allegations in Plaintiffs' antitrust complaint. Dr. Maibach, however, did

4

not provide an opinion on the validity of the '894 Patent. (Id.) Further, from September 2010 through February 2011, Mr. Chorush had approximately seven conversations with Dr. Maibach. During these conversations, Dr. Maibach gave his opinion that the '894 Patent was invalid, citing several references. Dr. Maibach has billed the Plaintiffs for 19.5 hours and has been paid $12,675.00. (Chorush Decl. ¶ 14; Doc. 238.)

In February 2011, while reviewing discovery materials, the Plaintiffs discovered communications between Paddock and Dr. Maibach in the Patent Litigation. (Chorush Decl., Exs. 2 & 3; Doc. 238.) On February 25, 2011, the Plaintiffs notified the Defendants of their intention to retain Dr. Maibach. On March 2, 2011, Solvay objected. (See id., Ex. 5.) Since this objection, the Plaintiffs have not discussed the case further with Dr. Maibach.

On March 21, 2011, Par/Paddock filed a Motion to Disqualify Dr. Michniak-Kohn [Doc. 216]. The next day, Solvay filed its Motion to Disqualify Dr. Maibach and Disqualify Plaintiffs' Counsel [Doc. 217]. The Defendants argue that Michniak-Kohn and Maibach received confidential information as a result of their engagements in the Patent Litigation. Further, Solvay argues that several of the Plaintiffs' counsel have been exposed to this confidential information.

## II.  Motion to Disqualify Standard

A.   <u>Motion to Disqualify Expert</u>

"Federal courts have the inherent power to disqualify experts." <u>Koch Refining Co. v. Jennifer L Boudreau M/V</u>, 85 F.3d 1178, 1181 (5th Cir. 1996). To determine whether disqualification is proper, courts apply a two-part test. First, the court must consider whether it was "objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed." <u>Id.</u> (citing <u>Mayer v. Dell</u>, 139 F.R.D. 1, 3 (D.D.C. 1991)). Second, courts assess whether "any confidential or privileged information [was] disclosed by the first party to the expert." <u>Id.</u> "In addition to the two-prong test, the court should balance competing policy objectives in determining whether an expert should be disqualified." <u>Cherry Hill Convalescent Center, Inc. v. Healthcare Rehab Sys., Inc.</u>, 994 F. Supp. 244, 251-52 (D.N.J. 1997) (citing <u>Cordy v. Sherwin-Williams Co.</u>, 156 F.R.D. 575, 580 (D.N.J. 1994)). "The party seeking disqualification bears the burden of establishing both the existence of confidentiality and its non-waiver." <u>Id.</u>

B.   <u>Motion to Disqualify Counsel</u>

In considering a motion to disqualify counsel, "three competing interests must be balanced: (1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration

of justice." Meat Price Investigators Ass'n v. Spencer Foods, Inc., 572 F.2d 163, 165 (8th Cir. 1978). Further, "because a motion for disqualification is such a 'potent weapon' and 'can be misused as a technique of harassment,' the court must exercise extreme caution in considering it to be sure it is not being used to harass the attorney sought to be disqualified, or the party he represents." Nuri v. PRC, Inc., 5 F. Supp. 2d 1299, 1304 (M.D. Ala. 1998).

### III. Discussion

#### A.  Par/Paddock's Motion to Disqualify

Par/Paddock has moved to disqualify Dr. Bozena Michniak-Kohn from serving as an expert witness for the Plaintiffs. First, Par/Paddock must show that it was objectively reasonable to conclude that it had a confidential relationship with Dr. Michniak-Kohn. See Koch, 85 F.3d at 1181. Here, the retainer agreement with Greenberg Traurig specifically provided that any information learned by Dr. Michniak-Kohn would remain confidential. (See Grannon Decl., Ex. A.) Although the existence of a contract between the parties is not determinative, the confidentiality clause provides strong evidence that Par/Paddock's communications with Dr. Michniak-Kohn were confidential. Nevertheless, the Plaintiffs argue that no confidential relationship existed because Dr. Michniak-Kohn was retained as a non-testifying expert. If Dr. Michniak-Kohn had testified, however, her work would have

been discoverable under Federal Rule of Civil Procedure 26. See Fed. R. Civ. P. 26(b)(4)(D). For this reason, "[a]ttorneys may employ two sets of experts--one for purposes of consultation and another to testify at trial--because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses." FED. R. CIV. P. 26 advisory committee's note (2010). Thus, as the advisory committee's note indicates, Par/Paddock could reasonably expect *more* confidentiality from a non-testifying expert like Dr. Michniak-Kohn. Given these circumstances, the Defendants could reasonably believe there was a confidential relationship between Dr. Michniak-Kohn and Par/Paddock.

Next, the Defendants must show that they disclosed confidential information to Dr. Michniak-Kohn. "Confidential information, in the context of expert disqualification, includes: 'discussion of the [retaining party's] strategies in the litigation, the kinds of expert [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses.'" Cherry Hill, 994 F. Supp. at 250 (quoting Koch, 85 F.3d at 1182). To support their claim, Par/Paddock has submitted the declaration of Daniel Ladow, lead counsel for Par/Paddock in the Patent Litigation [See Doc. 216-3]. Ladow asserts that he shared "developing mental impressions, legal analysis, and case strategy with [Dr. Michniak-Kohn]." (Ladow Decl. ¶ 24.) These general allegations,

however, are not sufficiently specific to establish that Par/Paddock disclosed confidential information. See Atlantic City Assocs., LLC v. Carter & Burgess Consultants, Inc., No. 05-3227, 2007 WL 63992, at *2 (D.N.J. 2007) (finding that the "generalized and vague allegation that the Experts know 'mental impressions and trial strategies, including his views on the strength and weaknesses of the various methods for measuring delays on construction projects and calculating damages in construction disputes' . . . is hardly the sort of proffer that should compel a court to disqualify an expert.").

Par/Paddock, however, relies on Wang Laboratories, Inc. v. Toshiba Corp., 762 F. Supp. 1246 (E.D. Va. 1991). In Wang Labs, the plaintiff moved to disqualify the defendant's expert. In support of its motion, the plaintiff produced two letters it had sent to the defendant's expert outlining the plaintiff's specific claims and potential defenses. Based on the information in the two letters, the court disqualified the expert. By contrast, here, most of Ladow's declaration describes information transferred from Dr. Michniak-Kohn to Par/Paddock. Unlike Wang Labs, Par/Paddock has cited no specific disclosures of confidential information. The bald assertion that Par/Paddock transferred "mental impressions, legal analysis, and case strategy," without mention of any specific communications, is not sufficient to carry the Defendants' burden of

showing that Dr. Michniak-Kohn received confidential information from Par/Paddock.

Further, public policy weighs against disqualification in this case. "The policy objectives favoring disqualification include preventing conflicts of interest and maintaining judicial integrity. The main policy objectives militating against disqualification are ensuring access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling." Cordy, 156 F.R.D. at 580 (citations omitted). "Courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party." Koch, 85 F.3d at 1183. Here, topical drug delivery is a narrow and specialized field. See Palmer v. Ozbek, 144 F.R.D. 66, 67 (D. Md. 1992) ("Courts are generally reluctant to disqualify expert witnesses, especially those . . . who possess useful specialized knowledge."); compare Wang Labs, 762 F. Supp. at 1250 n.6 (disqualifying expert but noting that "a different result might be warranted if, as is not true here, the consultant involved were unique in some relevant sense."). Indeed, there is evidence that experts in this area have been difficult to find. (See Chorush Decl. ¶¶ 3-5.) The Court notes the risk that the Defendants' relatively brief retention of non-testifying experts in a separate but related proceeding

could limit the Plaintiffs' ability to retain a topical drug delivery expert in this case. See Cordy, 156 F.R.D. at 582 (disqualifying expert and reasoning that "there is no evidence of anything unique about [the expert's] services."). In the Patent Litigation, Dr. Michniak-Kohn billed only 24 hours and did not testify or provide a formal expert report. Thus, balancing the need to prevent disclosure of Par/Paddock's confidential information against the Plaintiffs' need to obtain a competent expert, the Court declines to disqualify Dr. Michniak-Kohn.

    B.    Solvay's Motion to Disqualify

Similarly, Solvay has moved to disqualify Dr. Howard Maibach as an expert witness. Like Dr. Michniak-Kohn, Solvay has not produced specific evidence or communications showing that Dr. Maibach received confidential information during the Patent Litigation. Indeed, Solvay admits that it did not give Dr. Maibach *any* confidential written documents. (Ferguson Decl. ¶ 10.)  Rather, Solvay broadly claims that it "laid out specific elements of [its] litigation strategy." (Id. ¶ 9.) Further, in the Patent Litigation, Dr. Maibach worked only 10 hours as a non-testifying expert. He, like Dr. Michniak-Kohn, is an expert in a specialized and limited field. If he is disqualified, it may be difficult for the Plaintiffs to retain a substitute. See Wang Labs, 762 F. Supp. at 1250 n.6. Thus, the Court also declines to disqualify Dr. Maibach.

Finally, Solvay has moved to disqualify two law firms, Heim, Payne & Chorush, LLP and Garwin Gerstein & Fisher LLP, based on the firms' contact with Dr. Maibach. As discussed above, Solvay has not shown that Dr. Maibach received confidential information justifying his disqualification. Thus, neither firm is disqualified from representing the Plaintiffs.

## IV.  Conclusion

For the reasons set forth above, the Court DENIES Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc.'s Motion to Disqualify Plaintiffs' Proposed Expert [Doc. 216] and DENIES Solvay Pharmaceuticals, Inc.'s Motion to Disqualify Plaintiffs' Proposed Expert and Disqualify Plaintiffs' Counsel [Doc. 217].

SO ORDERED, this 16 day of May, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge