IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ANDROGEL ANTITRUST LITIGATION (NO. II) | MDL DOCKET NO. 2084 ALL CASES |
| | 1:09-MD-2084-TWT |
| ROCHESTER DRUG CO-OPERATIVE INC., on behalf of itself and all others similarly situated,<br>    Plaintiff,<br>        v.<br>UNIMED PHARMACEUTICALS INC., et al.,<br>    Defendants. | CIVIL ACTION FILE NO. 1:09-CV-956-TWT |
| LOUISIANA WHOLESALE DRUG CO. INC. on behalf of itself and all others similarly situated,<br>    Plaintiff,<br>        v.<br>UNIMED PHARMACEUTICALS INC., et al.,<br>    Defendants. | CIVIL ACTION FILE NO. 1:09-CV-957-TWT |
| MEIJER INC., et al.,<br>    Plaintiffs,<br>        v.<br>UNIMED PHARMACEUTICALS INC., et al.,<br>    Defendants. | CIVIL ACTION FILE NO. 1:09-CV-958-TWT |

OPINION AND ORDER

This is an antitrust action brought by the Federal Trade Commission and private antitrust actions transferred to this Court by the Judicial Panel on Multidistrict Litigation. The private actions are before the Court on the Direct Purchaser Class Plaintiffs'[1] Motion to Certify Class [MDL Doc. 1652]. For the following reasons, the Direct Purchasers' Motion to Certify Class is DENIED.

**I. Background**

Given that the facts of this case have been extensively described in the Court's other opinions, most recently regarding the parties' motions for summary judgment,[2] a brief summary of only those facts that are relevant is sufficient here. The Defendant Solvay is the distributor of brand-name AndroGel, a testosterone replacement drug. Solvay previously settled patent litigation with the Defendants Actavis and Par/Paddock. As part of those settlements, the Private Plaintiffs and the FTC allege that Solvay agreed to pay Actavis and Par/Paddock substantial amounts of money in exchange for Actavis and Par/Paddock agreeing to drop their challenges to Solvay's AndroGel patent and delay entry of their generic versions of AndroGel until 2015. The Plaintiffs

---

[1] The moving party Direct Purchaser Class Plaintiffs are Rochester Drug Co-operative, Inc.; Louisiana Wholesale Drug Company, Inc.; Meijer Inc.; and Meijer Distribution, Inc.

[2] *See In re Androgel Antitrust Litig. (No. II)*, No. 1:09-CV-955-TWT, 2018 WL 2984873, at *1-4 (N.D. Ga. June 14, 2018).

argue that these settlements violated the antitrust laws. The Direct Purchaser Class Plaintiffs, in particular, are drug wholesalers (or assignees) who claim that they paid substantially more money for brand and generic AndroGel due to the Defendants' coordinated delay of generic versions of AndroGel. They now seek to certify and represent a class of other similarly situated purchasers.

## II. Class Certification Standard

To maintain a case as a class action, the party seeking class certification must satisfy each of the prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b).[3] Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[4]

These prerequisites are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[5] Failure to establish any

---

[3] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

[4] FED. R. CIV. P. 23(a).

[5] *Cooper v. Southern Co.*, 390 F.3d 695, 711 n.6 (11th Cir. 2004), *overruled in part on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006).

one of the four factors precludes certification. In addition, under Rule 23(b), the individual plaintiffs must show that: (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation; (2) the party opposing the class has refused to act on grounds that apply generally to the class, necessitating final injunctive or declaratory relief; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.[6] The party seeking class certification bears the burden of proving that these requirements are satisfied.[7]

The decision to grant or deny class certification lies within the sound discretion of the district court.[8] When considering the propriety of class certification, the court should not conduct a detailed evaluation of the merits of the suit.[9] Nevertheless, the court must perform a "rigorous analysis" of the

---

[6] FED. R. CIV. P. 23(b).

[7] *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003).

[8] *Klay*, 382 F.3d at 1251; *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc).

[9] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).

particular facts and arguments asserted in support of class certification.[10] Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.[11]

### III. Discussion

The first prong of Rule 23(a) requires Courts to find that the proposed class is "so numerous that joinder of all members is impracticable."[12] "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."[13] These other factors include the "ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."[14] The Plaintiffs have proposed a class of thirty-three members, although the Defendants argue that the proposed class should be less than twenty-one members.[15] As discussed below, the Plaintiffs have

---

[10] *Falcon*, 457 U.S. at 161; *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984).

[11] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351-52 (2011).

[12] Fed. R. Civ. P. 23(a)(1).

[13] *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

[14] *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

[15] For Plaintiffs' proposed class, *see* Leitzinger Supp. Rebuttal Report, Exs. 5A, 5B [MDL Doc. 1653-4]; *See* Pls.' Br. in Supp. Mot. to Certify Class, at 19 [MDL Doc. 1653-1]. For the Defendants' counter arguments, *see* Par/Paddock Resp., at 1 [MDL Doc. 1691]; Solvay/Actavis Resp., at 3 [MDL Doc. 1694].

failed to show that joinder would be impracticable even with their larger proposed class, a conclusion that would only be strengthened were the class trimmed down any less. Therefore, the Court need not determine the appropriate size of the class.

The Plaintiffs' proposed class of thirty-three members places it squarely in the middle of the Eleventh Circuit's gray area. Whether joinder would be impracticable in this case therefore depends on the other factors outlined in *Kilgo*.[16] Here, the first two factors – ease of identification and feasibility of service – weigh against certification. The Plaintiffs already know each and every one of the potential plaintiffs.[17] They are all domestic companies whose addresses are fixed and known.[18] Serving them with papers would be straightforward.

The only factor potentially weighing in favor of certification is the geographic dispersion of the class. These companies are widely distributed across the United States, from San Francisco to Burlington, Vermont.[19] However, unlike the typical class action, in which there are a number of individual plaintiffs with relatively small claims, the Plaintiffs' proposed class consists of very large, sophisticated companies with very large claims. The vast

---

[16] *Kilgo*, 789 F.2d at 878.

[17] Leitzinger Supp. Rebuttal Report, Exs. 5A, 5B.

[18] Leitzinger Supp. Report, Ex. E [1653-3].

[19] *Id.*

majority of the proposed class members seem to have revenue of at least tens of millions of dollars per year, including at least ten members that have revenue in the billions.[20] Further, two-thirds of the class has alleged treble damages of over $1 million, and only six proposed members of the class have alleged treble damages of less than $100,000.[21] In addition, most of these companies have also litigated similar actions before.[22] This means that even though these proposed plaintiffs are widely distributed, they also have the means and the motivation to join this action if they so choose, unlike the typical class plaintiffs described above.

The Plaintiffs counter that some of the proposed Plaintiffs have relatively small claims, and that litigating these claims individually would cost substantially more than any potential damages they would receive if they won. They also argue that the class members with these smaller claims would likely be too worried over their relationships with suppliers to pursue their claims outside of a class action. These arguments do not alter the fundamental result.[23]

---

[20] *See* Par/Paddock Resp., Appx. B; Leitzinger Supp. Rebuttal Report, Exs. 5A, 5B.

[21] *Id.*, Ex. 5B.

[22] *See* Par/Paddock Resp., Appx. B.

[23] Other courts have declined to certify classes in similar situations. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 255-59 (3d Cir. 2016) (vacating certification order in which the proposed class consisted of very large companies, and rejecting arguments about negative claims and retaliation); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1797, 2017 WL 3705715, at *8-11 (E.D. Pa. Aug. 28, 2017) (denying certification for similar

First, although the Plaintiffs assert that many of their proposed class members would have negative claims, they fail to provide any evidence to support that assertion. The Plaintiffs argue that "antitrust litigation is expensive, often requiring millions of dollars in costs," and they point to the costs of retaining experts in this case, which have now exceeded $4.6 million.[24] They then include the following table to suggest that if a class member's claim is below $1 million or $4.6 million, their claim is therefore negative[25]:

| If damages are found to be . . . | . . . then this is the number of Class members having: | | | |
|---|---|---|---|---|
| | a claim size below | | a trebled claim size below | |
| | $1 million | $4.6 million | $1 million | $4.6 million |
| $166M | 26 (79%) | 30 (91%) | 20 (61%) | 28 (85%) |
| $1.7B | 15 (45%) | 22 (67%) | 12 (36%) | 16 (48%) |

But this table does nothing to demonstrate whether a claim is negative or not; it merely shows the distribution and size of the claims. On the one hand, the $1 million standard is pulled out of thin air. The Plaintiffs provide no answer or argument as to why $1 million should be the standard by which a claim is determined as being economically worthwhile or not. And on the other, the $4.6 million standard based on the cost of experts is a red herring. "[T]he

---

reasons).

[24] Pls.' Br. in Supp. Mot. to Certify Class, at 17.

[25] *Id.* at 18.

numerosity rule does not envision the alternative of individual suits; it considers only the alternative of joinder."[26] As joined parties, no individual plaintiff will bear the costs of those experts completely on their own. Here, the class plaintiffs would very likely sign joint litigation agreements and hire joint experts, just as the other Plaintiffs in this case have done for years. "It is not clear that there would be a need for that to change merely because absent Plaintiffs would be joined as individual parties instead of moving forward as a class."[27]

Further, "[t]he reality of contingent representation significantly undercuts [the Plaintiffs'] argument regarding litigation costs . . . In other words, the fact that all class members, even those with such so-called 'small' claims, would likely be represented on a contingent basis undermines [the Plaintiffs'] position" that litigating via joinder would result in a negative claim.[28] The Plaintiffs, particularly those with small claims, could therefore avoid the costs of litigating altogether, or at the very least could proportionally shoulder the burden amongst themselves. And even if there were still some small number of claims that would be uneconomical to bring, in light of the other factors at

---

[26]   *Modafinil*, 837 F.3d at 258.

[27]   *Id.* at 256. *See also King Drug*, 2017 WL 3705715, at *8 ("plaintiffs in this case as well as various related cases have jointly retained experts and nothing in the record suggests that continuing to do so would not be feasible if the case was to proceed via joinder.").

[28]   *Id.* at *10.

play, the Court still finds that a class action would be inappropriate here.[29]

Second, a joint action could not possibly harm the relationship between smaller wholesalers and the suppliers any more than a class action. In a joint action, especially one with so many large plaintiffs, the smaller plaintiffs would have little more involvement than they would under a class action. And although a class action would shield smaller Plaintiffs from discovery, it is not as if it would shield their identity.[30] The Defendants would still know they were opposing them in litigation.

Altogether, the Court finds that joinder would not be impracticable in this case. Given that Rule 23 allows Courts to certify class actions "only if" the Plaintiffs can demonstrate that joinder of all the parties would be impracticable, the Court need not analyze the parties' other arguments regarding adequacy.

## IV. Conclusion

For the reasons stated above, the Direct Purchaser Class Plaintiffs' Motion to Certify Class [MDL Doc. 1652] is DENIED.

---

[29] *See Modafinil*, 837 F.3d at 259 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)) ("Even if it were uneconomical for some or all of these six individual plaintiffs to join the suit, the District Court must still determine whether, considering all the other relevant factors, class status – which is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only' – is appropriate here.").

[30] Even in the case of joinder, Rule 26 would likely shield many of these plaintiffs. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (stating that courts may limit discovery where it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

SO ORDERED, this 16 day of July, 2018.


                                    /s/Thomas W. Thrash
                                    THOMAS W. THRASH, JR.
                                    United States District Judge